**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL DUKES,                                    )
                                                 )
        Plaintiff,                         )
                                                 )
vs.                                              )
                                                 )   Civ. A. No. 21-857
E.M.S.A. HSA STEPHANIE WOOD and                  )
MEDICAL PROVIDER RACHEL                          )
MEDLOCK,                                         )
                                                 )
        Defendants.                        )
                                                 )

## MEMORANDUM OPINION[1]

Plaintiff Michael Dukes, who is proceeding pro se, is a state prisoner housed at the State Correctional Institution ("SCI") at Fayette.  In his civil rights complaint, Dukes brings claims against Defendants EMSA HSA Stephanie Wood and Medical Provider Rachel Medlock in both their official and individual capacities.  (ECF No. 1.)  Along with his complaint, Dukes filed a motion for a temporary restraining order or for a preliminary injunction seeking certain medically prescribed glasses to help with his extensive vision issues.  (ECF No. 2.)  In so moving, Dukes explained that the Commonwealth Court of Pennsylvania denied him this same relief just five months earlier.  (*Id.*)

Also pending before the Court are motions to dismiss filed by each of the defendants.  (ECF Nos. 13, 21.)  For the reasons below, both motions to dismiss will be granted, and Dukes' motion for a temporary restraining order or preliminary injunction will be denied as moot.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case.  Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

## I.    Relevant Procedural History

In his Complaint, Dukes alleges that Defendants violated his Eighth and Fourteenth Amendment rights, federal regulations governing patient medical records, and the Americans with Disabilities Act ("ADA").  Specifically, he alleges: (1) an Eighth Amendment violation for deliberate indifference to his serious medical needs against Defendants Wood and Medlock; (2) a Fourteenth Amendment Equal Protection claim against Defendant Wood in which he alleges that he was treated differently than another inmate due to his disability; (3) a claim against Defendant Wood for violating unspecified federal regulations governing medical records; and (4) a claim against Defendant Wood for violating the ADA because he was treated differently than another inmate because of his disability.  (ECF No. 1, *Basis for Jurisdiction*, ¶ D.)

After service of his Complaint and motion for temporary restraining order or preliminary injunction, both Defendants separately moved to dismiss.  Defendants argue, among other things, that a prior proceeding filed by Dukes in the Commonwealth Court of Pennsylvania bars the present action.  Alternatively, Defendant Wood argues that Dukes' Eighth Amendment claim fails for the same reasons cited by the Commonwealth Court, his Equal Protection claim does not plead how another inmate was treated differently, his claim for breach of federal medical records law does not identify the statute or regulation that was violated, and his ADA claim does not plead what program to which he has been denied access within the prison.  (ECF No. 14.)  Similarly, Defendant Medlock alternatively argues that Dukes' claim of deliberate indifference should be dismissed because he has not pleaded a sufficient factual basis to establish that claim.  (ECF No. 22.)  Additionally, because Defendant Medlock is not a medical provider, she argues that Dukes' Eighth Amendment claim against her fails as she did not possess the necessary scienter.  (*Id.*)

In his response in opposition to both motions, Dukes asserts that res judicata does not bar his claims because his petition to the Commonwealth Court was part of the administrative grievance process and did not constitute a separate "action." (ECF No. 28 at 2-3.) He also argues the decision to deny him medically prescribed glasses based on cost *ipso facto* demonstrates deliberate indifference. (*Id.* at 3-4.) Moreover, he clarifies that he believes Defendant Wood violated 28 Pa Code §§ 115.31-33, because she misrepresented Dr. Russell's medical opinion. (*Id.* at 4.)

Dukes represents that he was never served with Defendant Wood's Motion to Dismiss. (ECF No. 27.) Despite the Court having previously ordered Dukes to respond to Defendant Wood's motion by November 1, 2021 (ECF No. 15) and having extended the deadline to do so until December 29, 2021 (ECF No. 25), his response in opposition was the first time Dukes alerted the Court to the fact that he had not received the filing. Nevertheless, the Court mailed him a copy of Defendant Wood's motion and gave him until January 24, 2022 to respond. (ECF No. 29.) In a document filed on January 31, 2022, Dukes states that he will rely on his previous filings, which are an Answer in Opposition to both motions (ECF No. 27), and a Brief in Support of his Answer (ECF No. 28) and will not file any additional responses.

Thus, all pending motions have been fully briefed and are ripe for disposition.

## II.    Relevant Factual Background

### A.    <u>Facts Alleged in Complaint</u>

In 2008, Dukes sustained a traumatic injury to his eye while playing basketball at SCI-Pittsburgh. (ECF Nos. 1, *Statement of Claim*, ¶ D1; 1-1 at 2.) Despite two surgeries, he continues to suffer from "persistent debilitating photophobia, traumatic mydriasis and glare." (ECF No. 1, *Statement of Claim*, ¶ D5.) Dukes believes that to correct his visual disability he needs a prosthetic

contact lens as well as trifocal eyeglasses with a wrap-around frame and extra active transition. (*Id.* ¶ 3.)  He further contends he is entitled to these glasses because the Pennsylvania Department of Corrections ("DOC") has a policy of providing one pair of medically necessary glasses to inmates, which can be "[s]ingle vision, bifocal, trifocal, or tint." (*Id.* ¶ 4; ECF No. 1-5.)

Dukes was sent to UPMC Eye & Ear for an eye exam, evaluation of prosthetic contact lenses, and a prescription for glasses.  (ECF No. 1, *Statement of Claim*, ¶ D5.)  He was prescribed progressive lenses, transitions extra active, and wrap around frame for glare control.  (*Id.*)

Two months later, Defendant Medlock, an administrator in the medical department at SCI-Fayette, advised Dukes that the Correctional Industries could not provide the eyeglasses he was prescribed.  (*Id.* ¶ 6.)  A month later, Dukes was sent to UPMC, to be fitted for "wrap-around frames with rubberized insets for glare control management." (*Id.* ¶ 7.)  Dukes was informed his glasses would take up to fourteen days to make.  (*Id.*)

Rather than providing Dukes with his glasses, in January 2019, Defendant Medlock informed Dukes that the glasses he was prescribed cost too much money and that the prison would not purchase them based on a belief that his need was cosmetic rather than medical.  (*Id.* ¶ 8.)  Later that month, Dukes was sent to UPMC for "[c]ontinued issues with glare and light sensitivity [and] [v]isually [s]ignificant issues with glare that impact functional ability." (*Id.* ¶ 9.)  Dukes' medical records include the following entry from Dr. Smith:

> Patient needs transitional lenses to add additional coverage when outdoors on bright sunny days and decrease on less sunny days.  Patient will also benefit from fit over lenses as well (wrap around frame).  I would also recommend transitions extra active based upon patient['s] visual needs and sensitivity to light and glare.

(*Id.* ¶ 9.)

On February 18, 2019, Dukes was informed by Defendant Medlock that he would be provided with the glasses as prescribed despite her knowledge that this was impossible.  (*Id.* ¶ 10.)

Dukes was then taken to an optometrist, Dr. Barry Russell, who selected frames, which were not wrap-around like Dr. Smith had recommended, and Dukes was measured for trifocal lenses. (*Id.*) Six weeks later, he received his new glasses. (*Id.* ¶ 11.)

Almost immediately, Dukes completed an Inmate Request to Staff Member directed to Defendant Medlock complaining that his new glasses were "inadequate" because the reading and middle lenses were too narrow and the transition lens was too light. (*Id.* ¶ 11; ECF No. 1-10.) On May 9, 2019, Dukes was taken to UPMC and was again evaluated by Dr. Smith. (ECF No. 1, *Statement of Claim*, ¶ D12.) Dr. Smith recommended the following: (1) Dukes' glasses are to be worn along with contact lenses; (2) "[s]egment height is functionally too low to read comfortably"; (3) "[t]ransitions lenses evaluated outdoors, [t]int is not dark enough"; and (4) "transitions extra active recommended as medical necessity as well as frame with more wrap to shield light from top and sides." (*Id.* ¶ 12; ECF No. 1-11.)

On May 28, 2019, Dukes submitted a second inmate request complaining that the eyeglasses remained inadequate. (ECF No. 1-17.) A month later, on June 17, 2019, Dukes was seen by Dr. Russell for his "traumatic mydriasis os glare photophobia." (ECF No. 1, *Statement of Claim*, ¶ D13.) Dr. Russell recorded that Dukes' "new glasses aren't dark enough transitions, bifocal height needs changed[,] and frames are too small this from to outside ophthalmologist." (*Id.*) In light of his findings, Dr. Russell resolved to discuss the issues with Dr. Smith as well as the institutional eye care before plotting a course to remedy the situation. (*Id.* ¶ 13.)

Having not received a response from Dr. Russell since his June 17, 2019 visit, Dukes filed an Official Inmate Grievance, Grievance No. 83104, on October 21, 2019. (*Id.* ¶ 14; ECF No. 1-13.) In this grievance, he contends that "[m]edical professionals at SCI-Fayette o[r] medical providers . . . acted with deliberate indifference when they delayed or denied [him] prescribed

medical treatment for non-medical reasons, chose an 'easier or less efficacious treatment' or continued a course of treatment they know is ineffective."  (ECF No. 1-13 at 1) (all capitals omitted.)

His grievance was denied on November 15, 2019 by Defendant Wood.  (ECF Nos. 1, *Statement of* Claim, ¶ 15; 1-14.)  There, she represented that after review of the medical records and a conversation with Dr. Russell, "Dr. Russell agrees that your glasses were made properly[,] and you are not authorized to receive another pair at this time."  (ECF No. 1-14.)

Dukes appealed to the Facility Manager, who upheld the Grievance Officer's decision, asserting in part that on-site and off-site doctors do not always agree on the proper course of corrective treatment and they sometimes disagree as to whether treatment is even necessary.  (ECF No. 1-17.)  Dukes again appealed the decision contending in part that his medical records were incomplete given that the June 17, 2019 notes from Dr. Russell were missing from his inmate medical records.  (*Id.* at 9.)  The Secretary Office of Inmate Grievance and Appeals ultimately upheld the decision on March 11, 2020.  (*Id.* at 11.)

**B.  Prior State Court Action**[2]

In his Complaint, Dukes represents that he brought a petition involving the same facts in the Commonwealth Court of Pennsylvania, No. 281 M.D. 2020, against the DOC.  (ECF No. 1, *Previous Lawsuits*, § B.)  Specifically, he filed a Petition for Review before the Commonwealth Court, in which he argued that "the [DOC] violated the Eighth Amendment of the United States Constitution by denying [him] adequate eyeglasses."  He also filed a Motion for Special and Summary Relief in which he sought mandamus relief to force the DOC to provide him with new

---

[2] A court can take judicial notice of a prior judicial opinion.  *M & M Stone Co. v. Pa.*, 388 F. App'x 156, 162 (3d Cir. 2010).

eyeglasses.  *Dukes v. Pa.S Dep't of Corr.*, 250 A.3d 549 (Pa. Commw. Ct. 2021).   As the

Commonwealth Court recounts in its opinion, Dukes' Petition set forth the following facts:

> Petitioner [Dukes] is incarcerated at the State Correctional
> Institution at Fayette (SCI-Fayette).   On April 2, 2019, prison
> officials issued [Dukes] eyeglasses made at SCI-Cambridge Springs.   On April 5,
> 2019, [Dukes] filed an inmate request complaining that the eyeglasses he
> had been issued were inadequate.   On May 28, 2019, [Dukes] filed a second
> inmate request complaining that the eyeglasses remained inadequate.   The
> May 28, 2019 Inmate Request indicates that, on May 9, 2019, [Dukes] was
> seen by an outside optometrist regarding his eyeglasses.   The May 28, 2019
> Inmate Request further indicates that SCI-Fayette officials discussed
> [Dukes'] concerns on June 13, 2019, and would have [Dukes] evaluated by
> the on-site optometrist regarding his concerns.   [Dukes] was seen by the on-
> site optometrist on June 17, 2019.
>
> [Dukes] filed Official Inmate Grievance No. 831043 (Grievance)
> with prison officials on October 21, 2019, claiming that his Department-
> provided eyeglasses were inadequate.   In the Grievance, [Dukes] claimed
> that medical professionals at SCI-Fayette denied [Dukes] prescribed
> medical treatment and/or acted with deliberate indifference to [Dukes']
> medical needs by
>
> > delay[ing] or den[ying] [Dukes'] prescribed medical
> > treatment for nonmedical reasons, chose an "easier or less
> > efficacious treatment" or continued a course of treatment
> > they know is ineffective.
>
> The Grievance referenced four (4) visits [Dukes] had with optometrists in
> relation to his eyeglasses, as well as multiple communications with SCI-
> Fayette personnel regarding the same.   On November 15, 2019, prison
> officials denied the Grievance after a review of [Dukes'] medical records
> and discussions with the on-site optometrist revealed that [Dukes'] issued
> eyeglasses were properly made and correctly comported with [Dukes']
> vision needs.   In denying the Grievance, prison officials noted that [Dukes']
> complaints regarding his issued eyeglasses stemmed from a desire on
> [Dukes] part to have his eyeglasses made in the community as opposed to
> in a State Correctional Institution.   [Dukes] appealed the Grievance
> determination through the various levels of the [DOC's] internal grievance
> process until receiving a Final Appeal Decision on March 11, 2020.

*Id.* (citations to the record omitted).

Dukes' petition was dismissed with prejudice on February 17, 2021. *Id.* In so ruling, the Commonwealth Court explained:

> Here, the [DOC] does not suggest that [Dukes'] visual deficiencies do not represent a serious medical condition, but instead argues that [Dukes] has not been deprived of medical treatment with regard to his condition. The [DOC] argues that the exhibits attached to the Petition evidence that [Dukes] has, in fact, received regular medical attention and assessment regarding the appropriateness and efficacy of his eyeglasses, and that his claims do not amount to allegations of deliberate indifference to his medical condition, but instead merely indicates [Dukes'] disapproval of and disagreement with the [DOC]'s course of treatment of his optical condition. We agree.

> Simply put, the allegations of the Petition do not rise to the level of an Eighth Amendment violation based on deliberate indifference to [Dukes'] medical/optical needs. On the contrary, review of the Petition and attached exhibits reveals that prison officials have provided [Dukes] with extensive medical attention for his optical complaints, including multiple visits to and consultations with various optometrists. The documentation included as exhibits to the Petition illustrates not only that those medical visits and consultations occurred, but that they resulted in determinations by the medical professionals consulted that [Dukes'] eyeglasses were both properly made and adequate for his needs. [Dukes'] dissatisfaction with these determinations does not transform them into deliberate indifference to [Dukes'] medical or optical needs. In effect, [Dukes] attempts to mandate the [DOC] to follow his particular preferred course of medical treatment. However, this [c]ourt will not second-guess the propriety or adequacy of a particular course of treatment determined appropriate by the professional judgment of medical professionals employed by the [DOC] to make such determinations. *Kretchmar*, 831 A.2d at 799.

> In this case, none of the factual averments contained in the Petition, even if accepted as true, demonstrate the elements necessary for success on a claim under the Eighth Amendment for unconstitutional conditions of incarceration based on deliberate indifference by prison officials to [Dukes'] medical/optical care. Therefore, [Dukes] is not entitled to the mandamus relief he requests.

*Id.*

Although Dukes appears to represent in his motion for temporary restraining order or preliminary injunction that he intended to petition for allocator seeking review of the Commonwealth Court's disposition, this Court has been unable to locate any indication that he in fact did so. Thus, the decision of the Commonwealth Court is a final judgment on the merits.

### III.   Legal Standard

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  However, conclusory allegations "are not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).   "In other words," the Third Circuit Court of Appeals has explained, the court "'must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.'" *Id.* at 131 (quoting *Fowler*, 578 F.3d at 210-11).  The court must "also disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief.  *See, e.g.*, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).  The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"A document filed pro se is to be liberally construed . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established").  Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim [,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

IV.    **Discussion**

A.    **Res Judicata Bars this Action**

In their motions to dismiss, both Defendants argue that the present action is barred by the doctrine of res judicata.  Although res judicata, also known as claim preclusion, is an affirmative defense, it can be raised on a motion to dismiss.  *Chilcott v. Erie Cty. Prison*, 774 F. App'x 99, 100 n.1 (3d Cir. 2019) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 870 n.14 (3d Cir. 1984)).  Res judicata protects defendants from "'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits'" by precluding any further suit.  *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011)).  It "applies not only to claims actually litigated, but also to claims *which could have been litigated* during the first proceeding if they were part of the same cause of action."  *Manu v. Nat'l City Bank of In.*, 471 F. App'x 101, 105 (3d Cir. 2012) (quoting *Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995) (emphasis added)).

Where, as here, the preclusive effect of a state court judgment is at issue, the Full Faith and Credit Statute guides our inquiry.  *Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017).  The statute reads, in relevant part, "'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of' the state from which they emerged."  *R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery*, 670 F.3d 420, 426 (3d Cir. 2011) (quoting 28 U.S.C. § 1738).  Accordingly, "[w]here a defendant in a federal action raises as a defense preclusion based upon a previously-rendered state court judgment, the federal court must 'look[ ] to the law of the adjudicating state to determine its preclusive effect."  *Garland v. Knorr*, Civ. A. No. 2:19-cv-2996, 2020 WL

3034811, at *10 (E.D. Pa. June 5, 2020) (quoting *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) (alteration in original)).

At issue here is the final judgment rendered by the Commonwealth Court of Pennsylvania. As a result, Pennsylvania preclusion law applies.[3]  Under Pennsylvania law, the doctrine of res judicata applies to bar a subsequent action where the two actions share "an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *In re Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021) (quoting *In re Iulo*, 766 A.2d 335, 337 (Pa. 2001)).  "[T]he dominant inquiry under those elements, then, is whether the controlling issues have been decided in a prior action, in which the parties had a full opportunity to assert their rights." *K.D. v. E.D.*, __ A.3d __, 2021 WL 5314731, at *5 (Pa. Super. 2021) (quoting *In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015)).

The Court addresses each of these elements in turn.

    1.  *Identity of Issues*

In deciding whether there is an identity of issues, courts "[d]etermine[e] whether the thing sued upon or for is the same between the two actions [by] '[is]olating the alleged wrongful act.'" *Vega v. Dep't of Transp.*, No. 3:19-CV-00773, 2020 WL 4570061, *3 (M.D. Pa. Aug. 7, 2020)

---

[3] There appears to be some confusion among the courts whether federal or state res judicata rules apply in prisoner litigation. *See Hammond v. Krak*, No. 20-1850, 2021 WL 3854763, at *2 (3d Cir. Aug. 26, 2021). The federal formula is slightly different and requires a defendant show: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). Irrespective of the test applied, Dukes' claims here are barred. The first element is satisfied because the Commonwealth Court's decision is a final judgment on the merits.  The second element is satisfied because privity exists between the DOC and both defendants here. *See Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 418 (M.D. Dec. 8, 2020) (finding a county and a warden of a county prison are in privity because the warden was an agent of the prison and under county control).  The final element is satisfied even though Dukes only raised an Eighth Amendment claim before the Commonwealth Court because he could have brought the claims he now raises here. *See id.*

(quoting *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988)).  Thus, a plaintiff cannot avoid res judicata simply by alleging new legal theories or altering the relief requested.  *See Tobias v. Halifax Twp.*, 28 A.3d 223, 227 (Pa. Commw. Ct. 2011).  In this case, the alleged wrongful act is denying Dukes adequate glasses, which is the same act asserted in the prior action.  Therefore, there is an identity of issues.

### 2. *Identity of Causes of Action*

As for second element, "an identity of causes of action is found when the subject matter and the ultimate issues are the same in both proceedings."  *Fields v. Am. Airlines, Inc.*, No. 19-903-KSM, 2021 WL 4306021, at *7 (E.D. Pa. Sept. 22, 2021) (quoting *Cromartie v. Pa. Bd. of Prob. & Parole*, 680 A.2d 1191, 1196 (Pa. Commw. Ct. 1996)).  For that reason,

> [a] judgment upon the merits bars a subsequent suit upon the same cause, though brought in a different form of action, and a party therefore cannot, by varying the form of action or adopting a different method of presenting his case, escape the operation of the principle that one and the same cause of action shall not be twice litigated.

*Rose v. Hoffman Ins. Consultants*, 241 A.3d 364 (Table), *3 (Pa. Super. 2020) (quoting *Kelly v. Kelly*, 887 A.2d 788, 792 (Pa. Super. 2005)).

When considering this element, court looks to "facts rather than legal theories."  *Lapensohn v. Hudson City Saving Bank*, Civ. A. No. 19-4576-KSM, 2021 WL 1581402, at *11 (E.D. Pa. Apr. 21, 2021).  Courts "may consider the identi[ty] of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged."  *Bolus v. Carnicella*, No. 4:15-cv-1062, 2020 WL 6365407, at *8 (M.D. Pa. Oct. 29, 2020) (quoting *Turner v. Crawford Square Apartments*, 449 F.3d 542, 549 (3d Cir. 2006)).  Said slightly differently, courts consider "whether the factual allegations of both actions are the same, whether the evidence is necessary to prove each action and whether both actions seek compensation for the same damages."  *Moffitt v.*

*Tunkhannock Area Sch. Dist.*, Civ. A. No. 3:19-CV-00899, 2020 WL 1874108, at *3 (M.D. Pa. Apr. 15, 2020) (quoting *Sprague v. Cortes*, 223 F. Supp. 3d 248, 274-75 (M.D. Pa. 2016)).  Thus, "a court's 'primary focus' should be 'whether the ultimate and controlling issues have been decided.'" *Id.*

Here, both actions stem from the same operative set of facts, involve the same purportedly bad actors, and are born out of the same grievance, Grievance No. 83104.  *See Merkel v. W.C.A.B.*, 918 A.2d 190, 193 (Pa. Commw. Ct. 2007) ("Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings").  Additionally, after careful review of the Commonwealth Court's decision, it is evident that each of Dukes' claims could have been brought before the Commonwealth Court.  Because Dukes has not pleaded any new facts or a change of circumstances since the Commonwealth Court's decision, this Court is reviewing the same facts and events as the Commonwealth Court.  Further emphasizing the identical nature of the causes of action is the fact that in both proceedings, Dukes sought an order requiring the DOC to provide the glasses that he claims are medically necessary.  Therefore, Dukes' Eighth Amendment, Fourteenth Amendment, federal record regulations, and ADA claims all involve the same sphere of facts, witnesses, and documents as in the proceeding before the Commonwealth Court and the focal point of both actions is the decision to deny Dukes certain glasses.  Thus, as there is an identity of causes of action, the second element is satisfied.

### 3. *Identity of Persons and Parties to the Action and Identity of the Quality or Capacity of the Parties Suing or being Sued*

The final two elements will be addressed together.  "The doctrine of res judicata bars not only future suits between the same parties, but also future suits between the same parties and those in privity with them." *Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013).  Privity is the "mutual or successive relationships to the same right of property, or such an identification of

interest of one person with another as to represent the same legal right." *Kwasny*, 853 F.3d at 95. An agency relationship is sufficient to establish privity. *Garland*, 2020 WL 3034811, at *13 (quoting *Montella v. Berkheimer Assocs.*, 690 A.2d 802, 804 (Pa. Commw. Ct. 1997)). In the same vein, "governmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body." *Vega*, 2020 WL 4570061, at *4 (quoting *Gregory*, 843 F.2d at 119-20).

In both cases, as Dukes is suing in his capacity as a DOC inmate, the third and fourth elements are clearly satisfied as to him. While Dukes named the DOC as a defendant in the state court action and now names two individual defendants instead, there still remains an identity of parties and quality/ capacity of the parties being sued. Here, Defendants Medlock and Wood are alleged to have provided services for the DOC and to have functioned as state actors. Indeed, both defendants are alleged to have been involved in the decision to deny Dukes the glasses he continues to request. Further, any liability in the state court mandamus action would have been predicated on the actions of personnel at SCI-Fayette, including Defendants Medlock and Wood. Thus, there is also an identity of parties and quality/ capacity to be sued.[4]

---

[4] Furthermore, while some courts have interpreted the language of "quality or capacity of the parties" relating only to whether the individual defendant was and is being sued in his/ her individual or official capacity, other courts have not interpreted the Pennsylvania test's wording so narrowly. *See Hammond v. Krak,* No. 2:17-CV-00952-CRE, 2020 WL 1032296, at *5 (W.D. Pa. Mar. 3, 2020), *aff'd in part, vacated in part, remanded*, No. 20-1850, 2021 WL 3854763 (3d Cir. Aug. 30, 2021); *Coleman v. Wetzel*, No. 1357 MDA 2016, 2017 WL 782715 (Pa. Super. Feb. 28, 2017). However, courts that have applied the narrower interpretation, have deemed dispositive the question of whether the plaintiff could have brought his claims in an earlier action. *See Hill v. Barnacle*, 598 F. App'x 55, 58 (3d Cir. 2016) ("Indeed, Hill could not have named the prison officials in their individual capacities in the Commonwealth Court because that court's original jurisdiction over individuals is limited to civil actions or proceedings brought against a state officer acting in his official capacity") (internal citation omitted). Unlike these cases, here, the Commonwealth Court could have exercised original jurisdiction over Dukes' official capacity claims and ancillary jurisdiction over his individual capacity claims. *See Pew v. Wetzel*, 2019 WL 6222123, No. 581 M.D. 2018, at *2 n.6 (Pa. Commw. Ct. Nov. 21, 2019).

It also bears noting that to allow this claim to go forward would run afoul of the fundamental purpose of the Full Faith and Credit Statute because this Court, in effect, would be reviewing the merits of the decision of the Commonwealth Court.   Simply because the Commonwealth Court and the United States District Court have concurrent jurisdiction over certain state prisoner civil rights claims does not sanction a second lawsuit under these circumstances. *See Cook v. City of Phila.*, Civ. A. No. 17-00331, 2019 WL 3233154, at \*7 (E.D. Pa. July 18, 2019) ("Res judicata will not be defeated by minor differences of form, parties or allegations where the controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights").   *See generally Kollock v. Beemer*, No. 24 M.D. 2017, 2017 WL 5894214, at \*4 (Pa. Commw. Ct. June 23, 2017) (discussing the purview of the Commonwealth Court's original jurisdiction over prisoner claims).

Otherwise, every prisoner could bring a claim in state court and if unsatisfied with the result, assert virtually the same claim in federal court. This would be true despite the fact the prisoner had only filed one grievance and had not alleged any new facts or a change in circumstances. *See Leisure v. Pfursich*, No. 21-cv-1769, 2021 WL 1561919, at \*1 (E.D. Pa. Apr. 21, 2021) (holding a pro se prisoner's Equal Protection claim against two individual defendants was barred because the pro se plaintiff "could have brought his due process claim in his prior case against the DOC . . .  in the Commonwealth Court"); *Rodland v. Cty. of Cambria*, No. 605 C.D. 2015, 2016 WL 439551, at \*2 (Pa. Commw. Ct. Feb. 3, 2016) ("adding other defendants in privity with prison administrator Prebish and changing causes of action did not afford Rodland a second bite of the apple").   Not only would this be a miscarriage of justice, but it would also be contrary to the very purpose of the doctrine of res judicata, which is to "'relieve the parties of the cost and vexation of multiple suits, conserve judicial resources, prevent inconsistent decisions, and

16

encourage reliance on adjudications" as well as deter claim splitting. *Coppolino v. Noonan*, No. CV 16-0249, 2016 WL 5076211, at *3 (E.D. Pa. Sept. 19, 2016) (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 551 (3d Cir. 2006)); *see Callaghan v. Haverford Twp.*, No. 1544 C.D.2010, 2011 WL 10845813, at *3 (Pa. Commw. Ct. 2011).

For these reasons, Dukes' claims in this action are barred by res judicata. On this ground alone, the motion to dismiss can be granted.

## B.  The Complaint Fails to State a Claim upon which Relief May be Granted for Additional Reasons[5]

Even if Dukes' claims were not barred by res judicata, each of them independently are subject to dismissal. At the outset the Court notes that the official capacity claims for monetary damages against both of these defendants are barred by the Eleventh Amendment.[6] Dukes' individual capacity claims and claim for injunctive relief fail for the reasons stated below.[7]

### 1.  *Eighth Amendment Claims Against Defendants Woods and Medlock*

Dukes asserts that Defendants Wood and Medlock were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. It is well established that "[t]he Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of

---

[5] Under the PLRA, where as is the case here, a prisoner seeks redress from an officer or employee of a governmental entity, 28 U.S.C. § 1915A, or prison conditions, 42 U.S.C. § 1997e, the Court can screen the complaint for deficiencies.

[6] Official capacity suits are barred under the Eleventh Amendment where a plaintiff is asserting a claim for monetary relief unless an exception to such immunity applies. *See Hailey v. Wetzel*, No. 3:20-CV-60, 2021 WL 6051446, at *8 (W.D. Pa. Dec. 20, 2021). The DOC and the facilities that comprise the DOC are agencies or arms of the Commonwealth of Pennsylvania and, as such, both they and their employees who are sued in their official capacities are entitled to Eleventh Amendment immunity. *Id.* Because no exception applies, Dukes' claims for monetary relief against Defendants Medlock and Wood in their official capacities are barred.

[7] Because Dukes cannot state a viable claim, his request for injunctive relief must similarly fail. *Byrd v. Brittain*, No. 1:19-CV-00059, 2021 WL 1212310, at *4 (M.D. Pa. Mar. 31, 2021).

decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

In order to establish an inadequate medical treatment claim under the Eighth Amendment, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson*, 850 F.3d at 534 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  As explained by the Third Circuit, "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. Rather, for a prison official "[t]o act with deliberate indifference to serious medical needs [of a prisoner] is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *Farmer*, 511 U.S. at 836).  "Under [this] recklessness standard, 'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844).

Thus, mere disagreement with treatment that is rendered is insufficient to state a claim for deliberate indifference under the Eighth Amendment, which is the nature of Dukes' claim. The Complaint and supporting exhibits demonstrate he was receiving regular and ongoing treatment for his vision issues both at the prison where he was confined as well as through UPMC Eye and Ear.  In an effort to correct his vision issues, he was prescribed and provided with glasses.

Although Dukes maintains the glasses are inadequate, these allegations do not and cannot rise to the level of an Eighth Amendment violation.

The Court now turns to the three remaining claims, each of which are against Defendant Wood.

### 2. *Equal Protection Claim Against Defendant Wood*

Dukes also alleges Defendant Wood violated his Fourteenth Amendment rights when she investigated and denied his grievance. However, the alleged failure of a grievance officer to remedy the actions of another defendant does not demonstrate sufficient personal involvement to state a claim for relief. Nor can a prisoner hold a prison official liable merely on the basis of a response to a grievance or request. *See Alexander v. Fritch*, Civ. A. No. 07-1732, 2010 WL 1257709, at *16 (W.D. Pa. Mar. 26, 2010) ("[p]laintiff cannot impose liability against any of the [d]efendants based solely on his or her involvement with his correspondence, grievances and misconducts as such conduct is insufficient to establish personal involvement as required under 42 U.S.C. § 1983."), *aff'd*, 396 F. App'x 867 (3d Cir. 2010); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official"). In addition, since inmates do not have a constitutional right to a prison grievance system, *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977), an inmate's dissatisfaction with a response to a grievance does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability). *See also Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) ("Access to prison grievance procedures is not a constitutionally-mandated right"). Thus, Dukes has not plausibly pleaded

Defendant Wood's personal involvement.

Dukes also has failed to plausibly plead an Equal Protection claim.  To establish a violation of the Equal Protection Clause, a plaintiff must ordinarily allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015)). Here, Dukes simply alleges that he was treated differently than another inmate.  Yet, he has not pleaded any facts that suggest this alleged difference in treatment was because of his race, religion, or other prohibited consideration.

To the extent Dukes intended to "state a claim under [a class of one theory], [he] must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006)).  As already discussed, Dukes has not alleged any facts that suggest he was denied the glasses for any reason other than a medical decision with which he disagrees.  Consequently, he has not alleged there was no rational basis for any purported difference in treatment, which is fatal to his Equal Protection claim.

Accordingly, Dukes has failed to state a Fourteenth Amendment claim against Defendant Wood.

### 3.  *Federal Records Claim Against Defendant Wood*

Dukes also alleges a violation of 28 Pa Code § 115.31-33.  However, no private right of action exists under these sections.  *See Maresca v. Mancall*, Civ. A. No. 01-5355, 2003 WL 21652170, at *4 (E.D. Pa. June 20, 2003).  Accordingly, dismissal is warranted on this claim.

4.  *Title II ADA Claim Against Defendant Wood*

Finally, Dukes attempts to assert a Title II ADA claim against Defendant Wood.  Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  It is well established that "[s]tate prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)); *see also Chisolm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) ("Title II of the ADA applies to services, programs and activities provided within correctional institutions").

Even assuming that Dukes could be considered disabled under the ADA, the denial of a pair of glasses is a medical treatment decision that is more properly addressed under the Eighth Amendment.  *See Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation").

At any rate, although the Third Circuit "has yet to address individual liability under Title II of the ADA," *Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012), it has approvingly cited "decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA." *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002)*.  See also Matthews v. PA Department of Corrs.*, 613 F. App'x 163 (3d Cir. 2015).  While the Third Circuit "has recognized an exception to this general rule to the extent a plaintiff may sue for prospective injunctive relief against state officials acting in their official capacities," *Mayon v. Capozza*, No.

2:14-CV-1203, 2015 WL 4955397, at *6 (W.D. Pa. Aug. 19, 2015) (citing *Koslow v. Commw. of Pa*, 302 F.3d 161, 178 (3d Cir. 2002)), Dukes cannot obtain such relief from a grievance officer.

For these reasons, Dukes' ADA claim against Defendant Wood will be dismissed.

## V.  Leave to Amend and Effect on Dukes' Motions for Injunctive Relief

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff a chance to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  For the reasons discussed, amendment of Dukes' claim would be futile.

Consequently, Dukes' motion for preliminary injunction or temporary restraining order will also be denied as moot.  *See Marchisotto v. Goodzeit*, No. 20-1870, 2021 WL 3403672, at *2, n.3 (3d Cir. Aug. 4, 2021).

## VI.  Conclusion

For these reasons, the motions to dismiss of Defendant Medlock and Defendant Wood will be granted and Dukes' Complaint will be dismissed with prejudice.  Further, given the dismissal of this action, Dukes' motion for a temporary restraining order or preliminary injunction will be denied as moot.

Appropriate orders will follow.

BY THE COURT:

Dated: February 14, 2022

s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge